1
2
3
4
5
6

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARSHAWN GOVAN, | CASE NO. CV F 13-0547 LJO SMS |
| Plaintiff, | **ORDER TO DISMISS CLAIMS WITH PREJUDICE AND JUDGMENT IN FAVOR OF DEFENDANTS WEIBER AND WILLOW** |
| vs. | (Doc. 38.) |
| CITY OF CLOVIS, et al., | |
| Defendants. | |
| _____/ | |

### PRELIMINARY STATEMENT TO PARTIES AND COUNSEL

Judges in the Eastern District of California carry the heaviest caseload in the nation, and this Court is unable to devote inordinate time and resources to individual cases and matters. This Court cannot address all arguments, evidence and matters raised by parties and addresses only the arguments, evidence and matters necessary to reach the decision in this order given the shortage of district judges and staff. The parties and counsel are encouraged to contact United States Senators Diane Feinstein and Barbara Boxer to address this Court's inability to accommodate the parties and this action. The parties are required to consider, and if necessary, to reconsider consent to one of the Court's U.S. Magistrate Judges to conduct all further proceedings in that the Magistrate Judges' availability is far more realistic and

1

accommodating to parties than that of U.S. District Judge Lawrence J. O'Neill who must prioritize criminal and older civil cases.  A Magistrate Judge consent form is available on this Court's website.

Civil trials set before Judge O'Neill trail until he becomes available and are subject to suspension mid-trial to accommodate criminal matters.  Civil trials are no longer reset to a later date if Judge O'Neill is unavailable on the original date set for trial.  If a trial trails, it may proceed with little advance notice, and the parties and counsel may be expected to proceed to trial with less than 24 hours notice.  Moreover, this Court's Fresno Division randomly and without advance notice reassigns civil actions to U.S. District Judges throughout the nation to serve as visiting judges.  In the absence of Magistrate Judge consent, this action is subject to reassignment to a U.S. District Judge from outside the Eastern District of California.  Case management difficulties, including trial setting and interruption, are avoided if the parties consent to conduct of further proceedings by a U.S. Magistrate Judge.

## **INTRODUCTION**

Defendants City of Clovis ("City") and City police officers Vince Weiber ("Officer Weiber") and John Willow ("Officer Willow") seek to dismiss as insufficiently pled and legally barred pro se plaintiff Marshawn Govan's ("Mr. Govan's") claims to challenge the constitutionality and enforcement against him of the City's Sign Law.[1]  Mr. Govan responds that his operative First Amended Complaint ("FAC") "pleads sufficient facts" to avoid dismissal.  This Court considered the City and Officers Weiber and Willow's (collectively "defendants'") alternative F.R.Civ.P. 12 motions on the record without a hearing.  *See* Local Rule 230(g).  For the reasons discussed below, this Court DISMISSES all of Mr. Govan's claims, except his equal protection claim which defendants did not legitimately challenge until they filed their reply papers.

---

[1]        The Sign Law is part of the City's ordinances, §1, Ord. 84-16, and will be referred to as the "Sign Law."

# BACKGROUND[2]

## Mr. Govan's Use Of Sign Wavers

Mr. Govan owns Liberty Tax Service which operates at 80 W. Bullard Avenue in the Crossroads Shopping Center in Clovis.  Liberty Tax Service provides tax services during the January to April tax season.

Liberty Tax Service employs "wavers" who dress in Statue of Liberty or Uncle Sam costumes and wave small signs regarding tax services.

## Prohibited Signs

The Sign Law prohibits:

1.      "Moving signs" which have animation, including "moving, rotating" (section 9.4.203(b)(2)) and "[s]igns which are portable" (section 9.4.203(c));

2.      Signs "within public spaces," including "any public street, sidewalk, parking lot, or right-of-way" (section 9.4.203(e)(1)); and

3.      "Temporary signs," including "affixing of signs of a miscellaneous character, visible from a public way" (section 9.4.203(e)(8)).

On January 29 and 30, 2013, Mr. Govan met with City officials to request a temporary permit for tax season.

## Mr. Govan's Citations

On January 31, 2013 at 11:30 a.m., two City police officers approached Liberty Tax Service's sign waver and took photographs.  At 1:12 p.m., another City police officer approached the sign waver and told him to put the sign down or be arrested.

On February 1, 2013 at 5 p.m., Officer Weiber ticketed Mr. Govan for Sign Law violations of animated signs, signs on public sidewalk, and temporary signs.

During the morning of February 2, 2013, Liberty Tax Service's manager observed a City patrol vehicle parked near the Liberty Tax Service office.  Later that afternoon, a City police officer stopped Liberty Tax Service's sign waver, took his photograph, and asked if the sign waver was aware that he was "in violation of the code."

---

[2]      The factual background summarizes the FAC and other matters which this Court may consider.

On February 4, 2013, the City maintained a police patrol vehicle in front of Liberty Tax Service's office.

On February 8, 2013, Officer Weiber again ticketed Mr. Govan for Sign Law violations of animated signs, signs on public sidewalk, and temporary signs.

On February 10, 2013, Officer Willow and another City police officer entered Liberty Tax Service's office and ticketed Mr. Govan for Sign Law violations of animated signs, signs on public sidewalk, and temporary signs.

On February 11, 2013, Officer Willow approached Liberty Tax Service sign wavers, took their signs, and maintained a presence in the office during operations.

On February 13, 2013, Officer Weiber ticketed Mr. Govan for Sign Law violations of animated signs and temporary signs.  On February 16, 2013, Officer Willow ticketed Mr. Govan for the same violations.  The FAC notes that Mr. Govan's citations are numbered consecutively "because the sign code was not being enforced against any other."

The City Planning and Development Services issued a February 21, 2013 memo on sign code enforcement to note:

1.     "The Clovis Police Department have [sic] been actively enforcing the Sign Ordinance in respect to temporary non-building mounted signs within specific target areas"; and

2.     "Mr. Govan continues to display his signs and stated during the meeting that the citations are a part of doing business."

On February 27, 2013, the City police maintained a patrol vehicle in front of Liberty Tax Service's office.

### Mr. Govan's Claims

The FAC alleges that defendants have demoralized Mr. Govan's business "by defamation of character due to this constant harassment which has affected business productivity by intimidating [Liberty Tax Service] employees and clients with police presence."  The FAC alleges claims for violations of federal constitutional rights via 42 U.S.C. § 1983 ("section 1983") as well as California-based claims.  The FAC's claims will be

4

discussed below.

## DISCUSSION

### F.R.Civ.P. 12(b)(6) Motion To Dismiss Standards

Defendants characterize the FAC as "generally the same" as Mr. Govan's previously dismissed original complaint.  Defendants fault the FAC's claims as invalid and redundant.

A F.R.Civ.P. 12(b)(6) dismissal is proper where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balisteri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990); *Graehling v. Village of Lombard, Ill.*, 58 F.3d 295, 297 (7th Cir. 1995).  A F.R.Civ.P. 12(b)(6) motion "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).

In addressing dismissal, a court must:  (1) construe the complaint in the light most favorable to the plaintiff; (2) accept all well-pleaded factual allegations as true; and (3) determine whether plaintiff can prove any set of facts to support a claim that would merit relief.  *Cahill v. Liberty Mut. Ins. Co.,* 80 F.3d 336, 337-338 (9th Cir. 1996).  Nonetheless, a court is not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Sciences Securities Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (citation omitted).  A court "need not assume the truth of legal conclusions cast in the form of factual allegations," *U.S. ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643, n. 2 (9th Cir.1986), and must  not "assume that the [plaintiff] can prove facts that it has not alleged or that the defendants have violated . . . laws in ways that have not been alleged." *Associated General Contractors of California, Inc. v. California State Council of Carpenters*, 459 U.S. 519, 526, 103 S.Ct. 897 (1983).  A court need not permit an attempt to amend if "it is clear that the complaint could not be saved by an amendment."  *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005).

A plaintiff is obliged "to provide the 'grounds' of his 'entitlement to relief' [which] requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554,127 S. Ct. 1955, 1964-65

(2007) (internal citations omitted).  Moreover, a court "will dismiss any claim that, even when construed in the light most favorable to plaintiff, fails to plead sufficiently all required elements of a cause of action." *Student Loan Marketing Ass'n v. Hanes*, 181 F.R.D. 629, 634 (S.D. Cal. 1998).  In practice, a complaint "must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Twombly*, 550 U.S. at 562, 127 S.Ct. at 1969 (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)).

In *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009), the U.S. Supreme Court explained:

> . . . a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." . . . A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. . . . The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.  (Citations omitted.)

After discussing *Iqbal*, the Ninth Circuit summarized: "In sum, for a complaint to survive [dismissal], the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Service*, 572 F.3d 962, 989 (9th Cir. 2009) (quoting *Iqbal*, 556 U.S. 662, 129 S.Ct. at 1949).

The U.S. Supreme Court applies a "two-prong approach" to address dismissal:

> First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. . . . Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. . . . Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. . . . But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not "show[n]"-"that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).

In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than

6

conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Iqbal*, 556 U.S. 662, 129 S.Ct. at 1949-1950.

Moreover, "a complaint may be dismissed under Rule 12(b)(6) when its own allegations indicate the existence of an affirmative defense." *Quiller v. Barclays American/Credit, Inc.*, 727 F.2d 1067, 1069 (11th Cir. 1984). "A motion under Rule 12(b)(6) should also be granted if an affirmative defense or other bar to relief is apparent from the face of the Complaint, such as lack of jurisdiction or the statute of limitations." *Kelly v. Ogata*, 120 F.Supp.2d 1244, 1247 (D. Haw. 2000). Lastly, vague and conclusory allegations of official participation in civil rights violations are not sufficient to withstand a motion to dismiss." *Ivey v. Board of Regents of Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir.1982).

With these standards in mind, this Court turns to defendants' challenges to the FAC's claims.

### Neutral Content

The FAC's (first) First Amendment claim alleges that the Sign Law is not content neutral and "is at best ambiguous as to whether it applies to a person wearing a costume." Defendants challenge claim in that the Sign Law:

1.   Applies to commercial and non-commercial speech regardless of its character or view; and

2.   Restrains exempt signs under the general limitations and prohibitions of section 9.4.203.

Mr. Govan asserts that the Sign Law "does not simply regulate the medium of communication, but regulates what messages a sign may convey." Mr. Govan claims that the Sign Law "is a content-based restriction on legal business activity, i.e., the preparation of tax documents."

"[C]ontent-neutral' speech restrictions as those that are justified without reference to the content of the regulated speech." *Boos v. Barry*, 485 U.S. 312, 320, 108 S.Ct. 1157 (1988)

7

(internal citations and quotations omitted).   To determine whether a regulation is content neutral, a court inquires "whether the government has adopted regulation of speech because of disagreement with the message it conveys."  *Ward v. Rock Against Racism*, 491 U.S. 781, 791, 109 S.Ct. 2746 (1989).   A "city may distinguish between the relative value of different categories of commercial speech."  *Metromedia, Inc. v. City of San Diego,* 453 U.S. 490, 101 S.Ct. 2882 (1981).

The FAC alleges no facts that the Sign Law's restrictions are based on content or wrongfully distinguish among categories of commercial speech.   The Sign Law regulates signage despite its message and places where speech may occur.   Neither the FAC nor Mr. Govan offer facts or inferences that the Sign Law targets tax preparers or was adopted due to disagreement with a particular message.   Nothing suggests that the Sign Law is unconstitutional based on content restrictions.

### Excessive Prohibition

The FAC's (second) excessive prohibition claim alleges that the Sign Law "is overbroad" and "is more extensive than necessary to advance the alleged governmental interest" to violate Mr. Govan's "right to free speech as guaranteed by the 1st amendment to the United States Constitution and the California Constitution Article 1, sections 2 and 7."

### *California Constitutional Claims*

Defendants fault the FAC's (second) excessive prohibition claim for alleging California Constitutional violations, relief for which is unavailable under section 1983.

"Section 1983 imposes two essential proof requirements upon a claimant:  (1) that a person acting under color of state law committed the conduct at issue, and (2) that the conduct deprived the claimant of some right, privilege, or immunity protected by the Constitution or laws of the United States."  *Leer v. Murphy*, 844 F.2d 628, 632-633 (9th Cir. 1988).

"Section 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'"  *Albright v. Oliver*, 510 U.S. 266, 271, 114 S.Ct. 807, 811 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144, n. 3, 99 S.Ct. 2689, 2694, n. 3 (1979)).  Section 1983 and other federal civil rights statutes address liability

"in favor of persons who are deprived of 'rights, privileges, or immunities secured' to them by the Constitution." *Carey v. Piphus*, 435 U.S. 247, 253, 98 S.Ct. 1042 (1978) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 417, 96 S.Ct. 984, 996 (1976)). "The first inquiry in any § 1983 suit, therefore, is whether the plaintiff has been deprived of a right 'secured by the Constitution and laws.'" *Baker,* 443 U.S. at 140, 99 S.Ct. 2689 (1979). Stated differently, the first step in a section 1983 claim is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271, 114 S.Ct. 807, 813 (1994). "Section 1983 imposes liability for violations of rights protected by the Constitution, not for violations of duties of care arising out of tort law." *Baker*, 443 U.S. at 146, 99 S.Ct. 2689.

"Under Rule 8(a), a complaint must do more than name laws that may have been violated by the defendant; it must also allege facts regarding what conduct violated those laws." *Anderson v. U.S. Dept. of Housing and Urban Development*, 554 F.3d 525, 528 (5th Cir. 2008).

Defendants are correct that an alleged California Constitutional violation fails to support a section 1983 claim. To the extent based on California Constitutional violations, the (second) excessive prohibition claim is subject to dismissal.

### *Vague And Overbroad*

Defendants further attack the (second) excessive prohibition claim as duplicative of the FAC's (first) First Amendment claim. Defendants characterize the Sign Law to draw "a careful and deliberate balance between serving the enactment's justifications, while reasonably permitting a broad range of commercial speech."

Mr. Govan holds defendants to demonstrate that restriction on Liberty Tax Service sign wavers "advances a substantial government objective."

The FAC lacks facts that the Sign Law is vague and overbroad or excessively prohibits protected speech. As to a substantial governmental objective, the Sign Law's purposes include to "[p]rotect and enhance the character and natural beauty of the community" and to "[e]liminate unnecessary distractions which may jeopardize pedestrian and vehicular traffic safety." (Section 9.4.102.) As such, the Sign Law promotes pedestrian and vehicle safety and

community aesthetics.   Mr. Govan offers no meaningful support that the Sign Law or its enforcement fails to advance a substantial governmental objective.   The FAC's conclusory claims fail to support the (second) excessive prohibition claim to warrant its dismissal.

**Unbridled Discretion**

The FAC's (third) unbridled discretion claim alleges that the Sign law requires a sign display permit to grant "limitless discretion in approving or denying the application to engage in protected free speech activity."

Under the prior restraint doctrine, "a law cannot condition the free exercise of First Amendment rights on the unbridled discretion of government officials." *Desert Outdoor Adver. v. City of Moreno Valley*, 103 F.3d 814, 818 (9th Cir.1996) (internal quotation marks omitted). "Regulations must contain narrow, objective, and definite standards to guide the licensing authority and must require the official to provide an explanation for his decision." *Long Beach Area Peace Network v. City of Long Beach*, 574 F.3d 1011, 1025 (9th Cir.2009) (internal quotation marks, citations, and alterations omitted); *see also Seattle Affiliate of the Oct. 22nd Coal. to Stop Police Brutality v. City of Seattle*, 550 F.3d 788, 798 (9th Cir.2008) (ordinance must have "narrowly drawn, reasonable and definite standards that guide the hand of the administrator").

Licensing procedures are invalid if the government official authorizing such permits is given "unbridled discretion" in deciding whether to deny or permit the expressive activity at issue. *City of Lakewood v. Plain Dealer Publ'g Co.*, 486 U.S. 750, 759, 108 S.Ct. 2138, 100 L.Ed.2d 771 (1988).   "Unbridled discretion challenges typically arise when discretion is delegated to an administrator, police officer, or other executive official," as opposed to a legislative body. *Long Beach Area Peace Network*, 574 F.3d at 1042. The danger is that absent standards controlling the exercise of discretion, government officials may determine "who may speak and who may not based upon the content of the speech or viewpoint of the speaker." *Plain Dealer*, 486 U.S. at 763-64, 108 S.Ct. 2138.

Defendants fault the FAC's attempt to challenge the Sign Law's application process given the Sign Law's detailed standards for receipt of a sign permit and appeals process for

permit denials to avoid unbridled discretion to grant or deny a permit.  Mr. Govan responds: "Because the permit process has failed to account for an approval process for the situation at hand, and because the Planning Services Director can arbitrarily withhold an application, the Sign Ordinance violates the First Amendment."

Mr. Govan offers nothing substantive to support his notions as to unbridled discretion. The Sign Law's sections 9.4.401 and 9.4.402 address the procedures for sign permit applications and review.  The Sign Law's section 9.4.404 addresses appeals of sign permit denials.  The FAC lacks allegations that Mr. Govan availed himself of the application and appeals processes or even was denied an application after he exhausted procedures.  The FAC merely alleges his meetings with City officials.  The FAC lacks facts of unbridled discretion as to sign permits.  The FAC's limited conclusions fail to support an unbridled discretion claim.

### Different Treatment Of Commercial and Non-Commercial Speech

The FAC's (sixth) different treatment claim alleges that the Sign Law unconstitutionally distinguishes between commercial and non-commercial speech to fail to advance the Sign Law's purpose and intent and to restrict "advertisement and freedom of speech" by prohibiting sign wavers.

Commercial speech is an "expression related solely to the economic interests of the speaker and its audience" or "speech proposing a commercial transaction."  *Central Hudson Gas & Elec. Corp. v. Public Serv. Comm.*, 447 U.S. 557, 561-562, 100 S.Ct. 2343 (1980).  A city "may constitutionally distinguish between commercial and noncommercial billboards." *Charles v. City of Los Angeles,* 757 F.Supp.2d 989, 1002 (C.D. Cal. 2010).  "Because our First Amendment jurisprudence recognizes a distinction between commercial and noncommercial speech, government officials have to place a particular message into one or the other category for purposes of regulation. The potential difficulty of that categorization in itself does not render the regulations unconstitutional."  *Outdoor Sys., Inc. v. City of Mesa*, 997 F.2d 604, 610, 613 (9th Cir.1993).   "A regulation that serves purposes unrelated to the content of the expression is deemed neutral, even if it has an incidental effect on some speakers or messages but not others." *Ward*, 491 U.S. at 791, 109 S.Ct. 2746.

11

The "underinclusiveness of a speech regulation has been found to be impermissible" when:

1.     A "regulation's underinclusiveness indicates that it is intended to give one side of a debate an advantage over the other" and is thus "content-based and hence invalid"; or

2.     The "nature of the underinclusiveness 'diminish[es] the credibility of the government's rationale for restricting speech in the first place.'  This second consideration relates to whether the regulation is sufficiently tailored in light of the government's stated purposes . . ."  *Doucette v. City of Santa Monica,* 955 F.Supp. 1192, 1204-1205 (C.D. Cal. 1997) (quoting *City of Ladue v. Gilleo*, 512 U.S. 43, 52, 114 S.Ct. 2038 (1994)).

Defendants fault the FAC's absence of "actionable allegations in terms of differing treatment between commercial and noncommercial speech" in that the Sign Law applies to all speech.  Defendants note that the FAC fails to allege a distinction between commercial and non-commercial speech to give an advantage to one side of the debate.  Defendants argue that narrow exemptions for limited temporary non-commercial speech to do not invalidate the Sign Law in that such distinctions serve City interests to regulate signage, particularly temporary signage such as during political seasons.  Defendants further criticize the FAC's (sixth) different treatment claim as redundant of the (first) First Amendment and (second) excessive prohibition claims.

Mr. Govan offers no meaningful opposition to defendants' challenges.  This Court construes the absence of such opposition as Mr. Govan's concession that the FAC's (sixth) different treatment claim fails.  The (sixth) different treatment claim is subject to dismissal.

### Due Process

The FAC's (fourth) First and Fourteenth Amendment violation claim alleges that the City Council denied to hear Mr. Govan's request for a temporary sign permit and therefore Mr. Govan has not received "proper due process."   The FAC's (seventh) vagueness claim references denial of "substantive due process rights" and alleges that the Sign Law "fails to define violations with the necessary definitiveness that an ordinary person could understand what conduct is prohibited."  The claim alleges that "costumes worn by employees of Liberty

Tax service are not 'signs' within the meaning of Section 9.4.203."

Defendants characterize the FAC's fourth and seventh claims to allege a procedural due process violation.  "The Fourteenth Amendment protects individuals against the deprivation of liberty or property by the government without due process."  *Portman v. County of Santa Clara*, 995 F.2d 898, 904 (9th Cir. 1993).  "A section 1983 claim based upon procedural due process thus has three elements: (1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government; (3) lack of process. The Due Process Clause does not create substantive rights in property; the property rights are defined by reference to state law."  *Portman*, 995 F.2d at 904.

An ordinance may be void for vagueness because either it (1) fails to give a "person of ordinary intelligence a reasonable opportunity to know what is prohibited;" (2) "impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application;" or (3) "abut(s) upon sensitive areas of basic First Amendment freedoms, [ ] operat[ing] to inhibit the exercise of (those) freedoms." *Grayned v. City of Rockford*, 408 U.S. 104, 108, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972).

As to procedural due process, defendants fault the FAC's failure "to allege what if any purported right to be heard . . . has been denied."  Turning to vagueness, defendants argue that the FAC's claims "are not of a constitutional magnitude" but rather evidence Mr. Govan's disdain for its valid restrictions.  Defendants point to the Sign Law's detailed provisions, definitional instructions, and processes to obtain permits and to request variances to thwart vagueness challenges.  Defendants contend that the Sign Law expressly covers sign wavers given section 9.4.203(b)(2)'s inclusion of "moving, rotating signs" with reference to prohibited animation and moving signs.  Defendants further criticize the FAC's fourth and seventh claims as duplicative of one another.

In response, Mr. Govan asserts that the Sign Law fails to address "costumed human wavers" to render a person of reasonable intelligence unable "to consider a costumed human being to qualify as a sign."  Mr. Govan continues that the Sign Law is arbitrary and open to

1   discriminatory application because it "is open to different interpretations."

2       As to due process, the FAC lacks allegations that Mr. Govan availed himself of the sign

3   permit application and appeals processes.  As such, defendants are correct that the FAC fails to

4   identify denial of a purported right to be heard.  In addition, Mr. Govan fails to substantiate

5   vagueness of the Sign Law.  He merely disagrees with its application as to sign wavers.  The

6   conduct at issue here falls within animation expressly prohibited by the Sign Law's section

7   9.4.203(b)(2).  As such, the (fourth) First and Fourteenth Amendment and (seventh) vagueness

8   claims fail and are subject to dismissal.

9   **<ins>Duplicative Official Capacity Claims Against Officer Weiber And Willow</ins>**

10      As to Officers Weiber and Willow in their official capacities, defendants seek dismissal

11  of the FAC's (first) First Amendment, (fourth) First and Fourteenth Amendments, (sixth)

12  different treatment, and (seventh) vagueness claims (collectively "duplicative claims") as

13  duplicative of claims against the City proceeding under section 1983 and lacking facts to

14  subject Officers Weiber and Willow to liability.

15      Official-capacity suits "generally represent only another way of pleading an action

16  against an entity of which an officer is an agent."  *Monell v. New York City Dept. of Social*

17  *Services*, 436 U.S. 658, 690, n. 55, 98 S.Ct. 2018 (1978).  The U.S. Supreme Court has further

18  explained:

19          Personal-capacity suits seek to impose personal liability upon a government
20      official for actions he takes under color of state law. . . .  Official-capacity suits, in
        contrast, "generally represent only another way of pleading an action against an entity
21      of which an officer is an agent." . . . As long as the government entity receives notice
        and an opportunity to respond, an official-capacity suit is, in all respects other than
22      name, to be treated as a suit against the entity.

23

24  *Kentucky v. Graham*, 473 U.S. 159, 165-166, 105 S.Ct. 3099 (1985) (citations omitted).

25      An official capacity action is not against the public employee personally, "for the real

26  party in interest is the entity."  *Graham*, 473 U.S. at 166, 105 S.Ct. 3099.  "An official capacity

27  suit against a municipal officer is equivalent to a suit against the entity."  *Center for Bio-*

28  *Ethical Reform, Inc. v. Los Angeles County Sheriff*, 533 F.3d 780, 799 (9th Cir. 2008).

Local government officials sued in their official capacities are "persons" under section 1983 in cases where a local government would be suable in its own name. *Monell*, 436 U.S. at 690, n. 55, 98 S.Ct. 2018. "For this reason, when both an officer and the local government entity are named in a lawsuit and the officer is named in official capacity only, the officer is a redundant defendant and may be dismissed." *Luke v. Abbott*, 954 F.Supp. 202, 203 (C.D. Cal. 1997) (citing *Vance*, 928 F.Supp. at 996). "Section 1983 claims against government officials in their official capacities are really suits against the governmental employer because the employer must pay any damages awarded." *Butler v. Elle*, 281 F.3d 1014, 1023 (9th Cir. 2002).

 "[I]t is no longer necessary or proper to name as a defendant a particular local government officer acting in official capacity." *Luke*, 954 F.Supp. at 204. As the district court in *Luke*, 954 F.Supp. at 204, explained:

> A plaintiff cannot elect which of the defendant formats to use. If both are named, it is proper upon request for the Court to dismiss the official-capacity officer, leaving the local government entity as the correct defendant. If only the official-capacity officer is named, it would be proper for the Court upon request to dismiss the officer and substitute instead the local government entity as the correct defendant.

*See Vance v. County of Santa Clara*, 928 F.Supp. 993, 996 (N.D. Cal. 1996) ("if individuals are being sued in their official capacity as municipal officials and the municipal entity itself is also being sued, then the claims against the individuals are duplicative and should be dismissed").

Defendants note that the duplicative claims fail to address Officer Weiber's and Willow's conduct to support their personal liability in that they were not involved to create or draft the Sign Law. Defendants contend that the duplicative claims against Officers Weiber and Willow in their official capacities are "the same claims against the City" to warrant their dismissal as to Officers Weiber and Willow.

Defendants are correct that given the City's presence as a defendant, Officers Weiber and Willow need not be named as defendants in the duplicative claims to warrant their dismissal as to Officers Weiber and Willow. Mr. Govan's points that Officers Weiber and

Willow are sued in their personal capacities are unavailing as the issue is their official capacities.

## Injunctive Relief

The FAC's (eighth) injunctive relief claim alleges that Mr. Govan suffers irreparable injury to First Amendment rights from enforcement of the unconstitutional Sign Law to warrant injunctive relief.  Defendants seek dismissal of the injunctive relief claim in that an injunction is a remedy, not a stand-alone claim.

A "request for injunctive relief by itself does not state a cause of action and is properly raised as a separate motion." *Mbaba v. Indymac Federal Bank F.S.B.,* 2010 WL 424363, at *4 (E.D. Cal. 2010) (citing *Shamsian v. Atl. Richfield Co.*, 107 Cal.App.4th 967, 984–85, 132 Cal.Rptr.2d 635 (2003)).  "An injunction is a remedy, not a separate claim or cause of action. A pleading can . . . request injunctive relief in connection with a substantive claim, but a separately pled claim or cause of action for injunctive relief is inappropriate." *Jensen v. Quality Loan Service Corp.*, 702 F.Supp.2d 1183, 1201 (E.D. Cal. 2010).

"Equity will not interpose its remedial power in the accomplishment of what seemingly would be nothing but an idly and expensively futile act, nor will it purposely speculate in a field where there has been no proof as to what beneficial purpose may be subserved through its intervention." *Karlsen v. American Sav. & Loan Assn.*, 15 Cal.App.3d 112, 117, 92 Cal.Rptr. 851 (1971). "Injunctive relief is a remedy and not, in itself, a cause of action, and a cause of action must exist before injunctive relief may be granted." *Shell Oil Co. v. Richter*, 52 Cal.App.2d 164, 168, 125 P.2d 930 (1942).

Injunctive relief is not a separate claim which can be pled.  Moreover, the remedy of injunctive relief fails with the failure of the FAC's claims.  Without a viable claim entitling Mr. Govan to injunctive relief, such relief is unavailable, especially considering the absence of facts to allege immediate need for such relief.  The (eighth) injunctive relief claim is subject to dismissal.

## Declaratory Relief

The FAC's (ninth) declaratory relief claim alleges that the Sign Law is "void, invalid

and unconstitutional" in that it "does not advance the alleged purposes of the Sign Code, is not narrowly tailored to be the least restrictive method to achieve the alleged purposes of the Sign Code, the Sign Code's permit process vests unfettered discretion in the Defendants to permit or prohibit speech, the discretion has been exercised in a discriminatory manner, the variances of the code offered to special interest groups undermine the alleged purpose of the Sign Code, the refusal to correctly process the permit and variance applications of [Mr. Govan] and indication that no variance of prohibited signs were allowed were unconstitutionally invalid and an abuse of discretion."

Defendants seek dismissal of the declaratory relief claim as a remedy, not a separate claim, and in the absence of a viable claim to support declaratory relief.

The Declaratory Judgment Act ("DJA"), 28 U.S.C. §§ 2201, 2202, provides in pertinent part:

> In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.  Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. §2201(a).

The DJA's operation "is procedural only."  *Aetna Life Ins. Co. of Hartford, Conn. v. Haworth*, 300 U.S. 227, 240, 57 S.Ct. 461, 463 (1937).  "A declaratory judgment is not a theory of recovery."  *Commercial Union Ins. Co. v. Walbrook Ins. Co., Ltd.*, 41 F.3d 764, 775 (1st Cir. 1994).  The DJA "merely offers an *additional remedy* to litigants."  *Nat'l Union Fire Ins. Co. v. Karp*, 108 F.3d 17, 21 (2nd Cir. 1997) (italics in original).  A DJA action requires a district court to "inquire whether there is a case of actual controversy within its jurisdiction."  *American States Ins. Co. v. Kearns*, 15 F.3d 142, 143 (9th Cir. 1994).

Declaratory relief is appropriate "(1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) when it will terminate and afford

relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Bilbrey by Bilbrey v. Brown*, 738 F.2d 1462, 1470 (9th Cir.1984).

As to a controversy to invoke declaratory relief, the question is whether there is a "substantial controversy, between parties having adverse legal rights, or sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Maryland Cas. Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273, 61 S.Ct. 510, 512 (1941). The U.S. Supreme Court has further explained:

> A justiciable controversy is thus distinguished from a difference or dispute of a hypothetical or abstract character; from one that is academic or moot. . . . The controversy must be definite and concrete, touching the legal relations of parties having adverse legal interests. . . . It must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.

*Haworth*, 300 U.S. at 240-241, 57 S.Ct. at 464 (citations omitted).

A declaratory relief action "brings to the present a litigable controversy, which otherwise might only be tried in the future." *Societe de Conditionnement v. Hunter Eng. Co., Inc.*, 655 F.2d 938, 943 (9th Cir. 1981). As an equitable remedy, declaratory relief is "dependent upon a substantive basis for liability" and has "no separate viability" if all other causes of action are barred. *Glue-Fold, Inc. v. Slautterback Corp.*, 82 Cal.App.4th 1018, 1023, n. 3, 98 Cal.Rptr.2d 661 (2000).

The FAC fails to support a declaratory relief claim given dismissal of other claims subject to defendants' motion to dismiss. The FAC fails to substantiate an independent claim for declaratory relief, and such claim is subject to dismissal.

/ / /

18

**Employment Discrimination**

The FAC's (twelfth) racial discrimination claim for disparate treatment and impact under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e, et seq., alleges that Mr. Govan was ordered "to cease and desist use of human directional signs, due to plaintiff being targeted."

Defendants challenge a Title VII claim in absence of Mr. Govan's employment relationship.  Title VII which makes unlawful an employer's discrimination "against any individual with respect to terms, conditions or privileges of employment because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1).

Defendants are correct.  The FAC lacks a basis to support a Title VII claim.

**California Claims Act Compliance**

The FAC's (tenth) California civil rights claim alleges that "because of race," defendants "intimidated, threatened, interfered and coerced [Mr. Govan] from exercise and enjoyment of rights secured by the Constitutions of the United States and California, the laws of the United States and California, including but not limited to free speech, due process and contract violations of Civil Codes Civ. Code 51, 551.5, 51.7, 52, 52.1, Cal. Const. Art I, §§ 7 & 13."

The FAC's (eleventh) intentional infliction of emotional distress ("IIED") claim alleges that defendants "committed intentional infliction of emotional distress on [Mr. Govan], public disputes, denial of municipal code hearings and not being privileged to participate in city Government issues."

The FAC's (thirteenth) defamation claim alleges that Officers Weiber and Willow erroneously cited Mr. Govan for Sign Law violations "which they knew as false representation" and that defendants gave material to City police patrol "which defendants knew as false representation."

Defendants contend that the California civil rights, IIED and defamation claims are

19

barred by Mr. Govan's failure to file a timely claim to comply with the California Government Claims Act ("Claims Act"), Cal. Gov. Code, §§ 810, et seq.

The Claims Act describes the specific steps which must be taken before a civil action for money or damages may be brought against a public entity. *Addison v. State of California*, 21 Cal.3d 313, 316, 146 Cal.Rptr. 224 (1978). The Claims Act requires timely filing of a proper claim as condition precedent to maintenance of an action. Cal. Gov. Code, §§ 905, 911.2, 945.4 (presentment of a written claim to the applicable public entity is required before a "suit for money or damages may be brought against a public entity"); *County of San Luis Obispo v. Ranchita Cattle Co.*, 16 Cal.App.3d 383, 390, 94 Cal.Rptr. 73 (1971). California Government Code section 911.2(a) provides: "A claim relating to a cause of action for death or for injury to person . . . shall be presented . . . not later than six months after the accrual of the cause of action. A claim relating to any other cause of action shall be presented . . . not later than one year after the accrual of the cause of action."

The claims procedures applicable to actions against public entities are the same for actions against public employees. Cal. Gov. Code, §§ 950-950.6. A "government claim must be filed with the public entity before a tort action is brought against the public entity or public employee." *Watson v. State of California*, 21 Cal.App.4th 836, 844, 26 Cal.Rptr.2d 262 (1993) (citing Cal. Gov. Code, § 950.2).

Compliance with the Claims Act is mandatory. *Farrell v. County of Placer*, 23 Cal.2d 624, 630, 145 P.2d 570 (1944). Failure to file a claim is fatal to the cause of action. *Johnson v. City of Oakland*, 188 Cal.App.2d 181, 183, 10 Cal.Rptr. 409 (1961). "Failure to allege facts in a complaint demonstrating or excusing compliance with prelitigation governmental claims presentation requirements of the Tort Claims Act subjects the complaint to a motion to dismiss for failure to state a cause of action." *Comm. for Immigrant Rights of Sonoma County v. County of Sonoma*, 644 F.Supp.2d 1177, 1205 (2004). A "plaintiff must allege facts demonstrating or excusing compliance with the claim presentation requirement." *State v. Superior Court*, 32 Cal.4th 1234, 1243, 13 Cal.Rptr.3d at 534 (2004). "Accordingly, submission of a claim within [six months] is a condition precedent to a tort action against

either the employee or the public entity."  *Williams v. Horvath*, 16 Cal.3d 834, 838,129 Cal.Rptr. 453 (1976).

"[N]o suit for money or damages may be brought against a public entity on a cause of action for which a claim is required to be presented . . . until a written claim therefor has been presented to the public entity and has been acted upon . . . or has been deemed to have been rejected."  Cal. Gov. Code, § 945.4.  California Government Code section 910 addresses the content of a government claim and requires the claimant's "name and post office address," the "date, place and other circumstances of the occurrence . . . which gave rise to the claim" and a "general description" of the "injury, damage, or loss incurred so far as it may be known at the time of presentation of the claim."  The Claims Act bars "actions alleging matters not included in the claim filed with the public entity."  *State of California ex rel Dept. of Transportation v. Superior Court*, 159 Cal.App.3d 331, 336, 205 Cal.Rptr. 518 (1984).

The California Court of Appeal has explained:

> If a plaintiff relies on more than one theory of recovery against the [governmental agency or employee], each cause of action must have been reflected in a timely claim. In addition, the factual circumstances set forth in the written claim must correspond with the facts alleged in the complaint; even if the claim were timely, the complaint is vulnerable to a demurrer [or dismissal] if it alleges a factual basis for recovery which is not fairly reflected in the written claim.

*Fall River Joint Unified School Dist. v. Superior Court*, 206 Cal.App.3d 431, 434, 253 Cal.Rptr. 587 (1998) (brackets in original; citations omitted).

"Courts have consistently interpreted the Tort Claims Act to bar actions alleging matters not included in the claim filed with the public entity."  *State of California ex rel Dept. of Transportation v. Superior Court*, 159 Cal.App.3d 331, 336, 205 Cal.Rptr. 518 (1984).  "In other words, the factual content of the plaintiff's claim [is] viewed by the trial court as operating to proscribe the limits of any later action for which filing the claim is a precondition."  *Williams v. Braslow*, 179 Cal.App.3d 762, 770, 224 Cal.Rptr. 895 (1986).  Each "theory of recovery" must be reflected in a timely claim, and "the factual circumstances set forth in the claim must correspond with the facts alleged in the complaint."  *Munoz v. State*

*of California*, 33 Cal.App.4th 1767, 1776, 39 Cal.Rptr.2d 860 (1995).  "If a plaintiff relies on more than one theory of recovery against the [public entity], each cause of action must have been reflected in a timely claim."  *Nelson v. State of California*, 139 Cal.App.3d 72, 79, 188 Cal.Rptr. 479 (1982).  A Claims Act claim "must set forth all the legal and factual bases that will be asserted in any subsequent lawsuit."  *Doe 1 v. City of Murrieta*, 102 Cal.App.4th 899, 920, 126 Cal.Rptr.2d 213 (2002).

The Claims Act is designed to protect governmental agencies from stale and fraudulent claims, to provide an opportunity for timely investigation, and to encourage settling meritorious claims.  *Johnson v. San Diego Unified School Dist.*, 217 Cal.App.3d 692, 697, 266 Cal.Rptr. 187 (1990).  The "claims statutes must be satisfied even in face of the public entity's actual knowledge of the circumstances surrounding the claim."  *Shelton v. Superior Court*, 56 Cal.App.3d 66, 82, 128 Cal.Rptr. 454 (1976).

Since the claims statutes should not be used as traps for the unwary when their underlying purposes have been satisfied, courts employ a test of substantial compliance, rather than strict compliance, in determining whether the plaintiff has met the filing requirements of the Claims Act.  *Johnson*, 217 Cal.App.3d at 697, 266 Cal.Rptr. 187.  "Although a claim need not conform to pleading standards, the facts constituting the causes of action pleaded in the complaint must substantially correspond with the circumstances described in the claims as the basis of the plaintiff's injury."  *Loehr v. Ventura County Community College Dist.*, 147 Cal.App.3d 1071, 1082-1083, 195 Cal.Rptr. 576 (1983).

Nonetheless, the substantial compliance doctrine "cannot cure total omission of an essential element from the claim or remedy a plaintiff's failure to comply meaningfully with the statute."  *Loehr*, 147 Cal.App.3d at 1083, 195 Cal.Rptr. 576.  "The test for substantial compliance is whether the face of the filed claim discloses sufficient information to enable the public entity to make an adequate investigation of the claim's merits and settle it without the expense of litigation."  *Connelly v. County of Fresno*, 146 Cal.App.4th 29, 38, 52 Cal.Rptr.3d 720 (1988).

Mr. Govan's Claims Act claim references "police presence," "police harassment," and

Mr. Govan's request for a "temporary permit."  The gist of the claim is that the City harassed Mr. Govan regarding Sign Law compliance to frustrate his business.  Defendants are correct, and Mr. Govan does not dispute, that Mr. Govan's Claims Act claim fails to provide notice of his California civil rights, IIED and defamation claims in absence of factual circumstances to support such claims.  The FAC's California civil rights, IIED and defamation claims are beyond the scope of Mr. Govan's Claims Act claim to warrant their dismissal given no substantial compliance with the Claims Act.

### Immunities

Defendants contend that California civil rights, IIED and defamation claims are barred by several California Government Code sections which protect exercise of discretion in governmental functions, including implementing and adopting the Sign Law, issuance of a permit under the Sign Law, and enforcement of the Sign Law.  For the City, defendants rely on California Government Code section 815.2(b), which provides that "a public entity is not liable for an injury resulting from an act or omission of an employee of the public entity where the employee is immune from liability."  Defendants continue that since Officers Weiber and Willow and other City employees are immune, so is the City.  "[I]f the employee is immune, so too is the County." *Kemmerer v. County of Fresno*, 200 Cal.App.3d 1426, 1435, 246 Cal.Rptr. 609 (1988).

Defendants point to the following immunities to protect Officers Weiber and Willow and other City employees and in turn the City:

1.     California Government Code section 818.2:  "A public entity is not liable for an injury caused by adopting or failing to adopt an enactment or by failing to enforce any law";

2.     California Government Code section 818.4:  " A public entity is not liable for an injury caused by the issuance, denial, suspension or revocation of, or by the failure or refusal to issue, deny, suspend or revoke, any permit, license, certificate, approval, order, or similar authorization where the public entity or an employee of the public entity is authorized by enactment to determine whether or not such authorization should be issued, denied, suspended or revoked";

3.    California Government Code section 820.2: A "public employee is not liable for an injury resulting from his act or omission where the act or omission was the result of the exercise of the discretion vested in him, whether or not such discretion be abused";

4.    California Government Code section 820.4:  "A public employee is not liable for his act or omission, exercising due care, in the execution or enforcement of any law";

5.    California Government Code section 821:  "A public employee is not liable for an injury caused by his adoption of or failure to adopt an enactment or by his failure to enforce an enactment";

6.    California Government Code section 821.2:  "A public employee is not liable for an injury caused by his issuance, denial, suspension or revocation of, or by his failure or refusal to issue, deny, suspend or revoke, any permit, license, certificate, approval, order, or similar authorization where he is authorized by enactment to determine whether or not such authorization should be issued, denied, suspended or revoked";

7.    California Government Code section 821.8:  "A public employee is not liable for an injury arising out of his entry upon any property where such entry is expressly or impliedly authorized by law"; and

8.    California Government Code section 822.2:  "A public employee is not liable for an injury arising out of his entry upon any property where such entry is expressly or impliedly authorized by law."

Mr. Govan fails to challenge application of the immunities, which further bolster dismissal of the California civil rights, IIED and defamation claims.

## CONCLUSION, ORDER AND JUDGMENT

Defendants' opening papers address all of the FAC's claims, except the (fifth) equal protection claim against the City.  Defendants' reply papers include their first legitimate challenges to the (fifth) equal protection claim.  This Court is unable to entertain such challenges raised for the first time in reply papers.  "Reply papers should be limited to matters raised in the opposition papers.  It is improper for the moving party to 'shift gears' and introduce new facts or different legal arguments in the reply brief than presented in the moving

papers." *Clark v. County of Tulare*, 755 F.Supp.2d 1075, 1090 (E.D. Cal. 2010). "Parties cannot raise a new issue for the first time in their reply brief." *State of Nev. v. Watkins*, 914 F.2d 1545, 1560 (9th Cir. 1990). "Arguments not raised by a party in its opening brief are deemed waived." *U.S. v. Romm*, 455 F.3d 990, 997 (9th Cir. 2006). A "district court need not consider arguments raised for the first time in a reply brief." *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007). As such, the FAC's (fifth) equal protection claim is not subject to dismissal at this time.

After Mr. Govan failed to oppose defendants' F.R.Civ.P. 12 motion to dismiss the claims of Mr. Govan's original complaint, this Court's July 19, 2013 order dismissed the original complaint's claims as insufficiently pled but granted Mr. Govan leave to amend his claims. In response to the July 19, 2013 order, Mr. Govan filed the FAC, which is no meaningful improvement of the original complaint and fails to cure deficiencies. Mr. Govan points to no further facts to support his claims dismissed by this order and fails to demonstrate ability to allege further facts to warrant a further attempt at amendment. As such, the FAC's claims, except the (fifth) equal protection claim, are subject to dismissal with prejudice as insufficiently pled or legally barred.

For the reasons discussed above, this Court:

1.      DISMISSES with prejudice the FAC's claims, except the (fifth) equal protection claim; and

2.      DISMISSES with prejudice this action and all claims against Officers Weiber and Willow and ENTERS this JUDGMENT in favor of defendants Vince Weiber and John Willow and against plaintiff Marshawn Govan in that there is no just reason to delay to enter this JUDGMENT given that Mr. Govan's claims against them and their alleged liability are clear and distinct from claims against and liability of any other defendant, including the City. *See* F.R.Civ.P. 54(b). This JUDGMENT is subject to F.R.App.4(a)'s time limitations to file an appeal of this JUDGMENT; and

3.      ORDERS the City, no later than October 24, 2013, to file and serve papers to respond to the FAC's remaining (fifth) equal protection claim against the City. The City may

file and serve a F.R.Civ.P. 12 motion as its response.


IT IS SO ORDERED.

    Dated:   **October 7, 2013**              **/s/ Lawrence J. O'Neill**
                                          UNITED STATES DISTRICT JUDGE